1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8    BRIAN M.,

9                      Plaintiff,                    Case No. C18-5397 MLP

10           v.                                       ORDER AFFIRMING THE
                                                     COMMISSIONER
11   COMMISSIONER OF SOCIAL SECURITY,

12                      Defendant.

13

14                          I.      INTRODUCTION

15           Plaintiff seeks review of the denial of her application for Disability Insurance Benefits.

16   Plaintiff contends the administrative law judge ("ALJ") erred in (1) weighing the medical

17   opinion evidence; (2) finding that Plaintiff's impairments did not meet or equal a Listing;

18   (3) assessing Plaintiff's residual functional capacity ("RFC"); and (4) evaluating the Vocational

19   Expert's testimony at Step Five. (Dkt. ## 17-18.) As discussed below, the Court AFFIRMS the

20   Commissioner's final decision and DISMISSES the case with prejudice.

21

22

23

## II.    BACKGROUND

Plaintiff was born in 1964 and has a high school education.  AR at 72.  He has worked as a landscaping laborer, outboard motor mechanic, and long-haul truck driver.  AR at 58.  Plaintiff was last gainfully employed as a truck driver in February 2002.  AR at 72.

On October 14, 2014, Plaintiff applied for benefits, alleging disability as of May 1, 2002.  AR at 18.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR at 18, 105, 107.  After the ALJ conducted a hearing on September 15, 2016, the ALJ issued a decision finding Plaintiff not disabled.  AR at 62-90.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one:  Plaintiff has not engaged in substantial gainful activity since his alleged onset date of May 1, 2002 through his date last insured of December 31, 2004.

Step two:  Plaintiff has the following severe impairments: mild facet arthropathies of the lumbar spine with mild narrowing at L4-S1, degenerative joint disease of the right acomioclavicular ("AC") joint, post-traumatic stress disorder ("PTSD"), depression, and personality disorder.

Step three:  These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity:  Plaintiff can perform light work, except the claimant could occasionally climb ramps and stairs, but not climb ladders, ropes, and scaffolds.  He could occasionally balance, stoop, kneel, crouch, and crawl.  He could occasionally reach overhead with his bilateral upper extremities.  He could perform simple, routine tasks that involve only superficial interaction with coworkers and the public.  He should avoid concentrated exposure to vibration and to hazards.

Step four:  Plaintiff cannot perform past relevant work.

Step five:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-34.

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1    As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

2  Commissioner's final decision.  AR at 1-6.  Plaintiff appealed the final decision of the

3  Commissioner to this Court.  (Dkt. # 4.)

### III.    LEGAL STANDARDS

5        Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

6  security benefits when the ALJ's findings are based on legal error or not supported by substantial

7  evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As

8  a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

9  ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

10  (cited sources omitted).  The Court looks to "the record as a whole to determine whether the

11  error alters the outcome of the case."  *Id.*

12        "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

13  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

14  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

15  Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d

17  1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may

18  neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas

19  v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than

20  one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

21

22

23

# IV. DISCUSSION

## A. The ALJ Did Not Err in Evaluating the Medical Evidence

### 1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. *Andrew S. Hwang, M.D.*

Plaintiff's assignments of error with respect to the ALJ's consideration of Dr. Hwang's opinion are not clear. First, Plaintiff erroneously states that the ALJ gave "little weight to Dr. Hwang's opinions as Dr. Hwang last saw [Plaintiff] in 2010 (sic), over a year before his alleged onset date." (Dkt. # 17 at 6.) However, Plaintiff's alleged onset date is May 2002. It is undisputed that Dr. Hwang treated Plaintiff during the relevant period from May 1, 2002 to December 31, 2004. AR at 92, 599, 610. Plaintiff claims the ALJ erroneously gave great weight to a medical expert but "failed to follow Dr. Hwang's restrictions concerning postural limitations and the climbing of ramps, stairs, ladders, ropes, and scaffolds." (Dkt. # 17 at 7.) However, neither party has identified any such opinion given by Dr. Hwang during the relevant period, and the Court is aware of none. As a result, Plaintiff has not shown any error in the ALJ's failure to discuss specific postural restrictions in relation to Dr. Hwang's opinion or treatment notes.

Finally, Plaintiff mistakenly argues that the ALJ afforded Dr. Hwang's opinion both "great weight" and "little weight." He first argues that Dr. Hwang's treatment notes "demonstrate a pattern of chronic back pain and problems associated with it. Therefore, these records should be given more than just little weight." (Dkt. # 17 at 6.) Subsequently, plaintiff asserts that "the ALJ did not take into consideration Dr. Hwang's additional restrictions based on [Plaintiff's] reported symptoms, despite giving Dr. Hwang's opinion great weight." (*Id*. at 8.)

Plaintiff has not shown that the ALJ committed any harmful error in evaluating Dr. Hwang's opinion. In fact, the ALJ considered both Dr. Hwang's opinion regarding Plaintiff's functioning and his treatment notes in detail. AR at 25-27. First, the ALJ noted that Dr. Hwang performed a psychological examination of Plaintiff in August 2003, at which time Plaintiff had been taking Remeron and Ambien for sleep troubles for the last four months "which have helped him a lot." AR at 25-26, 615. The ALJ noted that objectively, Plaintiff exhibited a depressed mood and affect, but he showed no signs of acute cognitive deficits and his mental status examination was otherwise normal. AR at 26, 616. He was well-groomed, made good eye contact, and was pleasant and polite. AR at 26, 616. The ALJ observed that Dr. Hwang's assessment "does not show him administering specific cognitive testing to support the diagnosis of ADHD. Rather, it appears that he based the diagnosis on the claimant's uncorroborated self-reported history." AR at 26, 615-16.

The ALJ further noted that Dr. Hwang's treatment notes from August 2003 reflected that Plaintiff "has been doing well" and "sleeps very well now" on his current doses of Effexor and Remeron. AR at 26, 599. Plaintiff reported having gone camping with his girlfriend recently, and having a good time. AR at 26, 599. During a follow up appointment two weeks later, Plaintiff told Dr. Hwang that he got into a series of car accidents in the same night while driving

on a combination of his prescribed Lithium, Remeron, and Ambien. AR at 26, 599. In response, Dr. Hwang discontinued Plaintiff's prescription for Ambien. AR at 26, 599. Treatment notes from September 2003 indicated that Plaintiff was in the middle of a jury trial stemming from his recent motor vehicle accidents. AR at 599. Plaintiff reported feeling "pretty good" on his current medications. AR at 599. Based upon Dr. Hwang's statement that Plaintiff "[k]nows that he cannot go back to work although time-loss comp was stopped last month," the ALJ noted, "subjectively, [Plaintiff] stated he believed he could not return to work." AR at 26.

In a letter dated January 2004, Dr. Hwang opined that "I believe he may be able to handle a job, if the job does not require too many interactions with others. I would recommend a work-hardening program in a field that does not require frequent contact with a large number of people." AR at 26, 610. Dr. Hwang stated that until Plaintiff completed some sort of program to work in a field other than truck-driving, he believed Plaintiff was unable to work. AR at 610. Based on these comments, the ALJ found it "apparent that Dr. Hwang believed the claimant's psychological symptoms would not preclude full-time work activity. The residual functional capacity in this decision includes a limitation for no more than superficial interaction with both coworkers and the public." AR at 26. Thus, the ALJ did not reject Dr. Hwang's January 2004 opinion, but accommodated it in his RFC assessment. AR at 610.

Finally, the ALJ noted that Dr. Hwang's last treatment note created prior to Plaintiff's December 31, 2004 date last insured was dated December 3, 2004. AR at 27, 601.[3] The note referenced the fact that Plaintiff had recently been in jail, a woman (apparently his mother) had obtained a no-contact order against him, and Plaintiff was currently living in a car with his

---

[3] The ALJ reasonably limited his analysis to the medical evidence that related to the period before Plaintiff's insured status expired. AR at 23. The ALJ is not required to discuss evidence of limited probative value, such as Dr. Hwang's treatment notes relating to Plaintiff's condition after his insured status expired. AR at 601.

girlfriend.  AR at 27, 601, 608.  However, the ALJ observed that "like Dr. Hwang's other notes, it contains no objective clinical observations that would support the claimant's allegation of disability.  When viewed longitudinally, Dr. Hwang's notes contain the claimant's subjective reports regarding the efficacy or inefficacy of his medications or allegations regarding his symptoms, but they do not include objective evidence such as Dr. Hwang's assessment of the claimant's mood, affect, or other clinical signs regarding his allegedly disabling mental impairments."  AR at 27.  Thus, the ALJ concluded that "when viewed against the objective psychological consultative examinations discussed below, the undersigned finds Dr. Hwang's treatment notes to have limited probative value for assessing the claimant's residual functional capacity during the relevant period considered by this decision."  AR at 27.

Plaintiff has failed to show that the ALJ erred in assigning limited weight to Dr. Hwang's treatment notes from the relevant period.  Unless Dr. Hwang's treatment notes expressed his opinion regarding specific functional limitations attributable to Plaintiff's alleged impairments, the ALJ was not required to discuss Dr. Hwang's treatment notes at all.  The ALJ is required to discuss medical opinions, and explain the weight assigned.  20 C.F.R. 404.1527(b)-(c).  Here, the ALJ reasonably explained that Dr. Hwang's treatment generally documented Plaintiff's subjective reports rather than any objective evidence, and therefore had limited probative value.  AR at 27.  *See Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) (finding that an ALJ is "not required to discuss evidence that is neither significant nor probative").

Similarly, the ALJ reasonably incorporated Dr. Hwang's January 2004 opinion that Plaintiff "may be able to handle a job, if the job does not require too many interactions with others" into his RFC assessment by limiting him to simple, routine work that required only superficial contact with coworkers and the public.  AR at 22, 26, 610.  It is the purview of the

ALJ to resolve ambiguities in the medical evidence. *See Lewis v. Apfel,* 236 F.3d 503, 509 (9th Cir. 2001). To the extent Dr. Hwang suggested that Plaintiff would be unable to work without training in a field other than truck driving, the ALJ was not required to afford this opinion any "special significance." Opinions that would be dispositive of a case, *i.e.*, that would direct the determination or decision of disability, are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Accordingly, the ALJ did not err by adopting Dr. Hwang's January 2004 opinion regarding Plaintiff's social functioning limitations and declining to adopt his opinion on issues reserved to the Commissioner.

### 3. *Mark A. Tomski, M.D.*

Plaintiff contends in a conclusory fashion that the ALJ failed to adequately consider the opinion of treating physician Dr. Tomski in assessing Plaintiff's RFC. (Dkt. # 17 at 6.) Plaintiff does not identify what aspect of Dr. Tomski's opinion he believes the ALJ should have adopted, or how it would affect the RFC in this case. (*Id.*) In fact, Plaintiff does not address the ALJ's reasoning and findings with respect to Dr. Tomski at all. It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work by framing the argument and putting flesh on its bones through a discussion of the applicable law and facts. *See Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Without more, Plaintiff's conclusory assertion that the ALJ erred in evaluating Dr. Tomski's opinion is insufficient to establish harmful error.

In November 2002, Dr. Tomski opined that Plaintiff had no physical issues that would prevent him from working. AR at 368. Plaintiff's physical examination was "completely benign," with intact reflexes and full ranges of motion. AR at 24, 368. Upon conferring with

Plaintiff's mental health provider in January 2003, Dr. Tomski indicated that Plaintiff was only restricted on psychological grounds from work. AR at 367-68.

The ALJ afforded "limited weight" to Dr. Tomski's opinion "to the degree that it could be interpreted that he believed the claimant was unable to work due to psychological symptoms." AR at 24-25. The ALJ pointed out that Dr. Tomski was a medical doctor, and not a psychiatrist or psychologist. AR at 24, 367. The opinion of a specialist in a particular field is generally entitled to greater weight than the opinion of a non-specialist. *See Molina*, 674 F.3d at 1112. Here, the ALJ found that the "longitudinal record . . . including multiple psychological consultative examinations do not objectively identify psychological barriers to fulltime employment." AR at 24. Moreover, Dr. Tomski stated that any psychological inability to work should "be confirmed" by Plaintiff's psychiatrist, to whom he would defer. AR at 25, 367.

Accordingly, to the extent that Dr. Tomski's opinion could be understood as indicating that Plaintiff was psychologically disabled from working, the ALJ could reasonably discount Dr. Tomski's opinion because it did not relate to his area of expertise. This was a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Tomski's comment.

### 4. Evidence of Post-Traumatic Stress Syndrome

Plaintiff contends that the ALJ erred in evaluating his PTSD impairment. (Dkt. # 17 at 6.) He states that his treating psychiatrist noted that Plaintiff experienced sleep disturbances as a result of his PTSD. AR at 569. Moreover, Plaintiff asserts that "the accident feels like it just happened which precluded [him] from working due to the trauma." (Dkt. # 17 at 7.)

Plaintiff identifies no limitations related to PTSD for which the ALJ did not account in his RFC finding. As noted above, Dr. Hwang's treatment notes from August 2003 reflect that Plaintiff was sleeping much better with his prescribed medications. AR at 359-60, 378, 406-07,

562, 592-93, 599, 616. Similarly, although Plaintiff reported to treatment providers that he remembered the accident as if it were yesterday and he did not think he could work again as a trucker, (AR at 356), this does not mean that his symptoms were so severe that he could not perform other jobs available in the national economy. The ALJ rejected Plaintiff's testimony regarding the severity of his symptoms in this case, and Plaintiff does not contest that finding. AR at 22-32. As a result, Plaintiff has not met his burden of demonstrating harmful error with respect to the ALJ's evaluation of his PTSD. AR at 24, 29-31.

   B.   The ALJ Did Not Err in Determining that Plaintiff's Impairments Did Not Meet or
        Equal a Listing, or in Assessing Plaintiff's RFC

Plaintiff fails to articulate how he believes the ALJ erred in evaluating the Listings with specificity. Plaintiff offers no plausible theory as to how his impairments satisfy the specific criteria for any Listing, and he cites no evidence in support of his contention. (Dkt. # 17 at 4.) As a result, he has waived the argument. *See generally Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity).

Because the Court has affirmed the findings of the ALJ as to Plaintiff's prior assignments of error, it must also conclude that there was no error in determining Plaintiff's RFC or relying upon that RFC to obtain testimony from a Vocational Expert at step five. Plaintiff has pointed to no credible evidence, apart from Plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that he believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC assessment. *See Carmickle*, 533 F.3d at 1164–65 (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work-related impairments).

# V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 28th day of March, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge